UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                      Case No. 18-CR-129 (JPS)

IONEL MURESANU,

    Defendant.

## MURESANU'S MOTION IN LIMINE REGARDING CERTIFIED RECORDS AND SUMMARY EXHIBITS

The government has stated it intends to rely on Fed. R. Evid. 803(6) and 902(11) "to introduce bank records for the victims of counts Two-Four, as well as to establish that the access devices contained false information with regard to count One." Doc. 23 at 2. The government has also indicated it wishes to present this information to the jury in summary form, under Fed. R. Evid. 1006.

Rule 1006 allows a party to "use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." The proponent of a summary exhibit must make the data underlying the summary available to the opposing party. *Id*. As a practical matter, Muresanu agrees that using a summary under Rule 1006 is an appropriate vehicle for presenting voluminous bank account information. However,

information included in a Rule 1006 summary must be based on matters that have been properly introduced into evidence. *United States v. Brown*, 136 F. 3d 1176, 1182 (7th Cir. 1998). Put differently, the underlying records themselves must be admissible for the summary chart to be admissible. *United States v. Oros*, 578 F. 3d 703 (7th Cir. 2009) (also stating Rule 1006 "is not an end around to introducing evidence that would otherwise be inadmissible."); *See also United States v. Irvin*, 682 F. 3d 1254 (10th Cir. 2011) (for summary chart of business records to be admissible, the government must prove that the underlying business records are admissible); *United States v. Bray*, 139 F. 3d 1104, 1110 (6th Cir. 1998) (admission of summary chart requires the underlying documents themselves to be admissible).

Records of regularly conducted activity are an exception to the general rule against hearsay. Fed. R. Evid. 803(6). Moreover, Rule 902(11) allows for the self-authentication of records of regularly conducted business activity so long as the proponent gives the adverse party notice of its intent to offer the record and makes the record and certification available for inspection. The government's Rule 902 Notice claims that the government has provided *all* the records to the defense. *See* Doc. 23 at 2. As set forth herein, that is not so.

Exhibit 26 is a spreadsheet titled "Summary Exhibit." According to the government, it summarizes the information that was on the cards police purport to have obtained from Muresanu, as well as the cards' embossed numbers. The spreadsheet has seven columns reflecting the following: 1) the embossed number; 2) type of card; 3) encoded account information; 4) name of victim; 5) actual issuing bank; 6) date recovered; and 7) location recovered. The spreadsheet then has eighty rows, each including the information above for a given card.[1] Exhibit 25 is a similar exhibit. It is a spreadsheet titled "Case Cloned Card Report." It is a list of what appears to be debit and credit cards. Muresanu is uncertain exactly what Exhibit 25 purports to represent.

Muresanu doesn't oppose the introduction of evidence that meets the requirements of Rules 902(11) and 1006. However, Exhibits 25 and 26 do not meet those requirements. First, the government has not made most of the underlying data available to the defense. Second, some of the data it has provided fails to meet the requirements of Rules 803(6) and 902(11). As a result, those records are not admissible on their own or as part of a summary.

---

[1] Column 7, reserved for the location recovered, is empty in every entry. Column 4, for name of victim, is empty in the overwhelming majority of rows.

a. *The government has not provided all of the records pertaining to Exhibit 26*

The government has produced three batches of records underlying its Rule 1006 summary. It claims the records are business records under Rule 803(6). Just prior to the close of business on August 10, 2018, the government provided the first batch of materials, a disc containing almost 1500 pages of bank account records. Those materials include bank records related to 24 accounts. They also include a list of 10 Bank of America accounts that are not business records, but records generated in anticipation of litigation. In total, the August 10 production includes some account information for 34 accounts.

On August 15, 2018, the government produced the second batch of records: Microsoft Excel spreadsheets that purport to list transactions from six of the records identified in Exhibit 26. On August 16, 2018, just prior to the close of business, the government produced the third batch. The defense did not obtain it until August 17, 2018, the Friday before the Monday trial. That third batch contains the actual account information and certification for the ten Bank of America accounts provided in the August 10 production. In total, these three productions provide some account information for 40 of the 80 cards the government lists in Exhibit 26. The government has provided no information for the remaining 40

cards. And the government has not provided any underlying information or reports for Exhibit 25.

But that's not to say that Exhibit 26 includes all the necessary data for those 40 entries where the government has provided some account information. For those 40 accounts, the productions merely establish that the account information the government alleges is contained on the cards constitute actual bank accounts at actual banks. The government's productions do not include any supporting or underlying data for the primary claim Exhibit 26 attempts to make: that the cards Muresanu possessed were actually encoded with the actual account data listed on Exhibit 26. And as Muresanu has argued in other motions, the government still has not provided that information to the defense. *See* Doc. 24.

For these reasons, the Court should exclude Exhibits 25 and 26 as the government has not made the vast majority of the underlying data and reports available to the defense as required by Rule 1006.

### b. *Some of the records don't meet the requirements of Rule 803(6)*

For business records to fall under Rule 803(6)'s hearsay exception, the record must be made at or near the time of the event contained in the record, it must be kept in the course of a regularly conducted activity of a business, and the making of the record must be a regular practice of that activity. *United States v. Briscoe*, 896

F. 2d 1476, 1494 (7th Cir. 1990). Muresanu agrees that most of the bank records the government has provided, though untimely, meet these requirements. But the Excel spreadsheets included in the August 15 production are not accompanied by a business records certification. It's also unclear whether they otherwise meet the requirements of Rule 803(6) or whether the documents were created for litigation. *See Jordan v. Binns*, 712 F. 3d 1123, 1135 (7th Cir. 2013) ("It is well established . . . that documents prepared in anticipation of litigation are not admissible under FRE 803(6)."); *see also Timberlake Const. Co. v. U.S. Fid. & Guar. Co.,* 71 F.3d 335, 342 (10th Cir. 1995) ("It is well-established that one who prepares a document in anticipation of litigation is not acting in the regular course of business."). As a result, the government should be precluded from using those records, either on their own or as part of a summary.

### c. *The production of records is untimely*

Rule 1006 requires the "party seeking to introduce a summary of voluminous records to provide copies of those records to the opposing party at a reasonable time and place." *United States v. Rangel*, 350 F. 3d 648, 651 (7th Cir. 2003). A "reasonable time and place" is one that provides the opposing party "adequate time to examine the records and check the accuracy of the summary." *Id*. Admittedly, there is little case law addressing what is reasonable in this context.

In *United States v. Isaacs*, 593 F. 3d 517 (7th Cir. 2010), the defendant argued that the government's disclosure three days before trial was unreasonable. However, the same data had been given to the defendant fifteen months earlier. The court found that fifteen months afforded "adequate time to examine the records to check the accuracy of the summary." *Id.* at 527 (quoting *Rangel*, 350 F. 3d at 651).

The only other case the defense could find addressing the timeliness of a Rule 1006 disclosure was *Jade Trading, LLC v. United States*, 67 Fed. Cl. 608 (2005). There, the Court of Federal Claims found that the disclosure of records one month before trial (and one month after the court's order required they be provided) was untimely. *Id.* at 615.

Thte government's disclosures here came on the final business day before the trial, 5 days before trial, and 10 days before trial. Muresanu submits that such a production fails to meet the "reasonable time and place" requirement of Rule 1006. It also violates Rule 16 and the Local Rules, and runs counter to the government's own "open-file policy."

Dated at Milwaukee, Wisconsin, this 19th of August, 2018.

Respectfully submitted,

/s/        Joshua Uller
Joshua Uller, Bar No. 1055173

Federal Defender Services
of Wisconsin, Inc.
517 E. Wisconsin Avenue, Room 182
Milwaukee, Wisconsin   53202
Telephone: 414-221-9900
Fax: 414-221-9901
E-mail: joshua_uller@fd.org

Counsel for Defendant, Ionel Muresanu