```
               UNITED STATES DISTRICT COURT

               EASTERN DISTRICT OF WISCONSIN
-----------------------------------------------------------------

UNITED STATES OF AMERICA,

                    Plaintiff,

          -vs-                         CASE NO.:  18-CR-129

IONEL MURESANU,

                    Defendant.
-----------------------------------------------------------------
```

FINAL PRETRIAL CONFERENCE in the above-entitled matter, held before the Honorable J.P. Stadtmueller, on the 4th day of September, 2018, commencing at 9:30 a.m. and concluding at 9:50 a.m.

A P P E A R A N C E S

United States Department of Justice
Office of the U.S. Attorney
Ms. Karine Moreno-Taxman
517 East Wisconsin Avenue, Room 530
Milwaukee, Wisconsin  53202
Appeared on behalf of the Plaintiff.

Federal Defender Services of Wisconsin, Inc.
Mr. Joshua D. Uller
510 East Wisconsin Avenue, Room 182
Milwaukee, Wisconsin  53202
Appeared on behalf of the Defendant, also present.


Ms. Kate Maternowski, Clerk.
Ms. Sheryl L. Stawski, Official Reporter.
                         * * * *

```
1                 T R A N S C R I P T   O F   P R O C E E D I N G S
2                      (The proceedings commenced at 9:30 a.m.)
3                      THE CLERK:  The Court calls United States versus Ionel
4       Muresanu, Case Number 18-CR-129, for a final pretrial
5       conference.
6                      May I have appearances beginning with the Government,
7       please.
8                      MS. MORENO-TAXMAN:  Karine Moreno-Taxman appearing on
9       behalf of the United States of America.  Also present with me
10      is United States Secret Service Agent Zach Hoalcraft.
11                     Good morning, Your Honor.
12                     MR. ULLER:  Good morning, Your Honor.
13                     Ionel Muresanu appears with Joshua Uller.
14                     THE COURT:  Thank you.
15                     Good morning, Ms. Moreno-Taxman; and good morning to
16      you, Agent Hoalcraft; good morning to you, Mr. Uller; and good
17      morning to you, Mr. Muresanu.
18                     This morning's hearing is pretty much a rerun of the
19      conference that we had a couple of weeks ago.  We're now ready
20      to proceed with the trial in this case next Monday.
21                     A couple of observations at the outset:
22                     First of all, I neglected to make a record the matter
23      of the sentencing options that the Court has with regard to the
24      1028A(a)(2)(4) with regard to the offenses charged in Counts
25      Two, Three and Four of the indictment.
```

1      Unlike the consecutive sentences available under
2  924(c), Congress has tinkered with the consecutive sentence
3  provisions of 1028A leaving it to the discretion of the Court
4  as to what incremental punishment, if any, ought to be imposed
5  for successive violations of 1028A.
6      And while I have no interest in knowing what the
7  Government's offer was to Mr. Muresanu to resolve the case
8  short of trial, it should be noted, if only parenthetically,
9  that by going to trial on all three counts of 1028A there is
10 the potential consistent with the policy statements found in
11 the Sentencing Guidelines for the Court to potentially impose
12 consecutive sentences in the event there are convictions on
13 more than one of the 1028A counts.
14     So in light of that, Mr. Uller, your file should
15 reflect fully what offers, if any, were made in this regard so
16 that there is no misunderstanding with regard to the potential,
17 if any, for consecutive sentences for multiple violations of
18 1028A.
19     Second, with regard to the jury panel, the panel for
20 next week is the only panel coming in and it will be for this
21 case; and no member of next week's panel was present for the
22 jury selection process that would have begun a couple of weeks
23 ago.
24     So in the likely event anyone took a look at the jury
25 questionnaires, none of those individuals who were part of that

panel will be included in this panel.  Apparently, they were used in Judge Adelman's case; and so they will not be here next week.  It will be a fresh panel.

Again, in terms of the Court's schedule, we'll start promptly at 8:30 on Monday.  I expect it will take an hour-and-a-half or thereabouts to pick a jury.  And again, Ms. Moreno-Taxman, you should plan to have all of your witnesses here on Monday.  We'll take a break at 10:30 for 15 minutes; we'll go until 12:45; 45 minutes for lunch; resuming at 1:30; going until 3:30; a break of 15 minutes; resuming at 3:45; and we should wrap up at about 5:45.

The Court has considered your submissions with regard to the jury instructions, and it appears that everybody's on board with the single set of requests including a verdict form.  Those will be formatted and made available Thursday afternoon.

Insofar as the motions in limine are concerned, it appears to the Court that generally they have been resolved.  To the extent that there are small matters with regard to what occurred in Tennessee and Mr. Muresanu's comments about his education in Romania and the matter of the boots, the Court will take all of those up during the trial.  But, generally, I think those are not going to be terribly difficult to address in the context of the evidence as it comes in.

So against that backdrop, are there any additional matters you'd like to raise this morning, Ms. Moreno-Taxman?

1     MS. MORENO-TAXMAN: Yes, Your Honor.

2     With regard to the pretrial motions, obviously the
3  only one that is of concern to the United States in order to
4  have a smooth trial on Monday is if the Court is going to grant
5  or not grant the defendant's request with regard to the
6  statements.

7     Just for technical purposes, Judge, we need to
8  either -- we're hoping the Court will agree with our position
9  and we need to do nothing; but, otherwise, it would take a
10 substantial amount of work on our part to change those things.

11    THE COURT: Mr. Uller, do you have any thoughts this
12 morning?

13    MR. ULLER: Well, up until about four years ago very
14 few interrogations were recorded and agents routinely testified
15 to the substance of a defendant's statement. You know,
16 recordings are nice; transcripts are nice as well; they're
17 certainly not necessary.

18    Obviously, if there's, you know, going to be a
19 boisterous cross-examination whether my client actually said
20 something that the agents testified to, that might open the
21 door for other parts of the statement or the transcript or the
22 actual recording to come in.

23    Candidly, I wouldn't anticipate that happening; and I
24 think it's typical for -- even where there are recordings and
25 transcripts for law enforcement officers to testify about the

1    substance or content of a defendant's post-arrest statement.

2    MS. MORENO-TAXMAN: Judge, if I can just respond.

3    THE COURT: Certainly.

4    MS. MORENO-TAXMAN: These statements were already
5    redacted, Your Honor. So they were redacted to the parts that
6    the United States felt were appropriate and relevant to this
7    case.

8    There is -- and defense cites no authority to claim
9    that the recordings are unflavored -- just are not acceptable
10   nor that transcripts are not acceptable -- in fact, there are
11   standard jury instructions for both of those items so the
12   United States should not be limited in its proof; and we would
13   ask the Court to not accept the defendant's position.

14   THE COURT: Well, other than his Romanian descent and
15   having attended Irish schools, are those the only issues that
16   remain?

17   MR. ULLER: Judge, there is still a pretty strong
18   disagreement on the admissibility of the events in Tennessee,
19   in St. Louis; and the lion's share of the portions of my
20   client's statement that the Government wants to introduce
21   pertain to those -- to those matters not to what happened on
22   the day of his arrest, not to what he was doing with the cards,
23   what he intended to do with the cards. Those portions of that
24   statement are included. And I don't object to those being
25   used.

1    But it's our view that the statements about what my
2 client did or didn't do months ago in a completely different
3 jurisdiction, there's no evidence that the cards that were in
4 his possession were skimmed, for lack of a better term, from
5 the ATM machines that the Government wants to introduce
6 evidence of; so it's -- it's other acts evidence.

7    And while I agree that the Government shouldn't be
8 constrained in its proof, it should be constrained by the rules
9 of evidence; and evidence of what happened in a different place
10 on a different date is -- is not relevant to the issues in this
11 case.

12    THE COURT: Well, with all due respect, Mr. Uller, if
13 the statement included evidence, for example, that your client
14 participated in a carjacking or an armed robbery or sold drugs,
15 I would quite agree. But in this particular case, what
16 occurred in Tennessee goes to the Government's desire to
17 establish knowledge and plan and precisely what occurred in
18 Oshkosh. It's inextricably intertwined.

19    And I think you're going to have an uphill battle
20 unless the Court is missing something here to suggest that
21 somehow, some way all of this is designed to paint your client
22 as a criminal with other evidence. And that is true. But in
23 this particular case, that other evidence is inextricably
24 intertwined with precisely what occurred here to show
25 knowledge, planning, absence of mistake, or accident. That's

1  what this boils down to in the view of the Court.

2  I'm not making a formal ruling in that regard, but I
3  suggest to you that you have an uphill battle unless you're
4  willing to stipulate that your client had full knowledge of
5  what skimming devices were and how they were deployed and all
6  of that. That's what this evidence goes to show.

7  And if Mr. Muresanu wants to stipulate to that, then
8  we can avoid the reference to Tennessee. But I dare say he's
9  probably not willing to do that any more than he is -- would be
10  to willing to resolve the case short of trial. So you have a
11  lot to think about.

12  But as for the boots, that's a different matter. And
13  I don't believe that there is anything to be game, set about
14  bringing a $600 pair of boots before the fact finder in this
15  case. But, again -- and, Ms. Moreno-Taxman, if you've got some
16  cogent analysis to suggest that that evidence be received, I'll
17  be happy to consider it.

18  Frankly, whether Mr. Muresanu is Native American or
19  Armenian or Czechoslovakian and whether he went to schools in
20  the U.S. or Ireland really has no direct relevance to any of
21  the core facts in this case, and I view it as being very
22  neutral at best and certainly doesn't go to show guilty
23  knowledge any more than it goes to show that he was present in
24  these United States illegally. That is not an element of the
25  offense with which he stands charged.

```
1          So we'll address these matters as they may come up
2    next week.
3          MS. MORENO-TAXMAN:  Thank you, Your Honor.
4          THE COURT:  Anything further?
5          MS. MORENO-TAXMAN:  No.  Thank you, Judge.
6          MR. ULLER:  No, Judge.  Thank you.
7          THE COURT:  Very well.  We'll see you then Monday
8    morning at 8:30.  The questionnaires or the information on the
9    panel will be available Thursday afternoon as will the jury
10   instructions.
11         Ms. Moreno-Taxman, is Ms. Kraft going to be with you
12   during the trial?
13         MS. MORENO-TAXMAN:  Yes, she is, Your Honor.
14         THE COURT:  Very well.  The Court stands in recess.
15         (Proceedings concluded at 9:50 a.m.)
```

Case 2:18-cr-00129-JPS   Filed 10/09/18   Page 9 of 10   Document 56

```
STATE OF WISCONSIN  )
                    ) SS:
MILWAUKEE COUNTY    )
```

                I, SHERYL L. STAWSKI, a Registered Professional Reporter and Official Court Reporter, for the United States District Court, Eastern District of Wisconsin, do hereby certify that the above proceedings were reported by me on the 4th day of September, 2018, and reduced to writing under my personal direction and is a true, correct and complete transcription of my computer-aided transcription of my stenographic notes.

                Dated at Milwaukee, Wisconsin, this 5th day of October, 2018.

                            s/ Sheryl L. Stawski

                            Sheryl L. Stawski
                            Official Court Reporter
                            United States District Court