# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>IONEL MURESANU,<br><br>　　　　　　　　　　Defendant. | Case No. 18-CR-129-JPS<br><br>**ORDER** |

## 1.　　INTRODUCTION

On June 12, 2018, the grand jury in this district returned a four-count Indictment against the defendant, Ionel Muresanu ("Muresanu"). (Docket #7). Count One charged Muresanu with a violation of 18 U.S.C. § 1029(a)(3), which proscribes possession of fifteen or more counterfeit access devices with the intent to defraud, and Counts Two through Four charged Muresanu with violations of 18 U.S.C. § 1028A(a)(1), which proscribes aggravated identity theft. *Id.* The case proceeded to a two-day jury trial beginning on September 10, 2018. *See* (Docket #47). The jury returned a verdict of guilty on all four counts. (Docket #46).

Muresanu then filed two post-trial motions as to his judgment of conviction on Counts Two, Three, and Four: a motion for an acquittal or arrest of judgment, (Docket #51), and a motion for a new trial, (Docket #52).[1] The motions are premised on a single problem with the Indictment that was

---

[1]Muresanu also filed a motion for acquittal during the trial, at the close of the United States' case. (Docket #44). The Court denied that motion at the trial. *See* (Docket #47 at 8). The Court invited Muresanu to renew his argument in post-trial motion practice, *see id.* at 9, which he has done.

first identified at the close of evidence during the trial. Namely, Counts Two, Three, and Four of the Indictment mistakenly included the words "attempt to" in the descriptions of those charges. *See* (Docket #7 at 2–4). The statute cited for those counts, Section 1028A(a)(1), proscribes the knowing transfer, possession, and use, without lawful authority, of a means of identification of another; it does not proscribe attempted transfer, possession, or use. In Muresanu's view, this defect must be remedied either by acquittal, an arrest of judgment, or a new trial.

Muresanu's post-trial motions are now fully briefed and ripe for adjudication. For the reasons explained below, they must be denied.

## 2. BACKGROUND

On June 12, 2018, the grand jury returned a four-count Indictment against Muresanu. (Docket #7). It charges read as follows:

### COUNT ONE

**THE GRAND JURY CHARGES THAT:**

Between on or about May 15, 2018, and May 16, 2018, in the State and Eastern District of Wisconsin, and elsewhere,

**IONEL MURESANU,**

with intent to defraud, did knowingly possess 15 or more counterfeit and unauthorized access devices, as defined in Title 18, United States Code, Sections 1029(e)(2) and e(3), and said conduct affected interstate commerce.

All in violation of Title 18, United States Code, Sections 1029(a)(3) and 2.

### COUNT TWO
### AGGRAVATED IDENTITY THEFT

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about May 16, 2018, in the State and Eastern District of Wisconsin, and elsewhere,

**IONEL MURESANU,**

during and in relation to a felony violation of Title 18, United States Code, Section 1029(a)(3), as charged in Count One, did knowingly attempt to transfer, possess, and use, without lawful authority, a means of identification of individual M.P., knowing that said means of identification belonged to another person.

All in violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

## COUNT THREE
## AGGRAVATED IDENTITY THEFT

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about May 16, 2018, in the State and Eastern District of Wisconsin, and elsewhere,

**IONEL MURESANU,**

during and in relation to a felony violation of Title 18, United States Code, Section 1029(a)(3), as charged in Count One, did knowingly attempt to transfer, possess, and use, without lawful authority, a means of identification of individual S.L.E., knowing that said means of identification belonged to another person.

All in violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

## COUNT FOUR
## AGGRAVATED IDENTITY THEFT

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about May 16, 2018, in the State and Eastern District of Wisconsin, and elsewhere,

**IONEL MURESANU,**

during and in relation to a felony violation of Title 18, United States Code, Section 1029(a)(3), as charged in Count One, did knowingly attempt to transfer, possess, and use, without lawful authority, a means of identification of individual E.L.B., knowing that said means of identification belonged to

another person.

      All in violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

*Id.*

The basic facts of the case were largely uncontested by the defendant. *See* (Docket #52 at 2). On May 16, 2018, detectives from the Oshkosh Police Department arrested Muresanu. *See* (Docket #49 at 17–25). He was in possession of approximately eighty debit giftcards. *Id.* at 27. Those cards had been re-encoded with account information obtained from skimming devices that had been placed on ATM machines in various states. *Id.* at 152–53. After his arrest, Muresanu repeatedly confessed to placing skimmers on ATMS and using cards that had been re-encoded with skimmed information to obtain funds from the accounts of unsuspecting victims. *See* Trial Exhibits 11, 12A, 12A1, 12B, 12B1, 12C, 12C1, 12F, and 12F1.

Neither party submitted any pretrial motions, including any motion under Federal Rule of Criminal Procedure 12. Not having been otherwise resolved short of trial, the case came before the Court on August 20, 2018 for a jury trial. (Docket #37). The Court expressed disappointment with the parties' efforts to adequately prepare the case for trial, noting the late filing of the final pretrial report and the eleventh-hour filing of motions *in limine* (none of which addressed an error with the Indictment), which extended into the evening before the day the trial was scheduled to begin. *Id.* The Court adjourned the jury trial until September 10 and ordered the parties to submit revised pretrial materials. (Docket #38).

The draft jury instructions submitted by the government in advance of the first scheduled trial repeated an error that appeared in the descriptive text for Counts Two, Three, and Four of the Indictment. Namely, each of

those counts, which charged identity theft in violation of Section 1028A, erroneously included the words "attempt to" in the following clause: "did knowingly *attempt to* transfer, possess, and use, without lawful authority, a means of identification of [an individual], knowing that said means of identification belonged to another person." (Docket #18-4 at 5–6). The government's proposed instructions also included the pattern instruction for attempt. *Id.* at 24. However, the government's proposed instruction for the elements of the Section 1028A charge made no reference to "attempt." *Id.* at 20. The proposed instruction mirrored the pattern instruction for aggravated identity theft. Muresanu did not submit proposed jury instructions applicable to the substantive offenses in advance of the first scheduled trial date.

The parties jointly submitted a new set of proposed jury instructions along with their revised final pretrial report. (Docket #40-4). Those proposed instructions included the "attempt to" typo in the descriptions of Counts Two, Three, and Four. *Id.* at 12–13. They also included the pattern attempt instruction. *Id.* at 17. As with the government's first set of proposed instructions, these instructions included the proper elements of the Section 1028A charge. *Id.* at 16.

The trial began on September 10, 2018 and lasted a day and a half. At the outset of trial, the Court provided counsel with copies of its draft jury instructions, which mirrored the jointly-proposed instructions the parties submitted with their revised final pretrial report. The government called nine witnesses, including the three individuals identified in Counts Two, Three, and Four as the account holders whose information was stolen. The government also introduced evidence consisting of video surveillance footage of Muresanu using fraudulent debit giftcards at a gas station ATM,

being confronted by an Oshkosh police officer, and attempting to flee the scene. The government also introduced video recordings of Muresanu confessing to his criminal conduct to law enforcement.

On September 11, 2018, at the close of the government's case, defense counsel made a Rule 29 motion for acquittal of Counts Two, Three, and Four of the Indictment. *See* (Docket #44). He argued, for the first time, that those counts as they appear in the Indictment charged Muresanu with "attempted" aggravated identity theft, which is not a crime. *Id.* The Court denied the motion, finding that it should have been brought under Rule 12 before trial. (Docket #50 at 29–30).

The Court discussed with the parties the necessary revisions to the jury instructions to remove any errant reference to "attempt." The Court took a short recess to revise the instructions and returned with a draft that omitted the words "attempt to" from the descriptions of the charges in Counts Two, Three, and Four and also omitted the instruction for attempt. Muresanu objected to the changes in the instructions, arguing that the Court's instructions now instructed the jury on a crime the grand jury had not charged. The Court noted the objection but overruled it. The defense rested without putting on any evidence.

The Court then instructed the jury. *See* (Docket #45). There is no dispute that the instructions on the law given to the jury accurately described the offense of aggravated identity theft.

3. ANALYSIS

   3.1 Motion for Acquittal

In his first motion, Muresanu asks for acquittal under Federal Rule of Criminal Procedure 29 or, in the lesser alternative, an arrest of judgment under Federal Rule of Criminal Procedure 34. For the sake of clarity, the

Court will consider his request for relief under Rule 29 first, and will move on to consider his request for relief under Rule 34 in the next section.

Federal Rule of Criminal Procedure 29(a) provides that "the court on the defendant's motion must enter a judgment of acquittal on any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "In challenging the sufficiency of the evidence, [a defendant] bears a heavy, indeed, nearly insurmountable, burden." *United States v. Warren*, 593 F.3d 540, 546 (7th Cir. 2010). The reviewing court will view the "evidence in the light most favorable to the prosecution," and the defendant "must convince [the court] that even after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found him guilty beyond a reasonable doubt.'" *Id.* at 546. In other words, a court will "set aside a jury's guilty verdict only if the record contains no evidence, regardless of how it is weighed, from which a jury could have returned a conviction." *United States v. Presbitero*, 569 F.3d 691, 704 (7th Cir. 2009).

Muresanu argues that the government failed to prove what the Indictment charged for Counts Two through Four: that Muresanu did "knowingly *attempt to* transfer, possess, and use, without lawful authority, a means of identification of individual[s], knowing that said means of identification belonged to another person" in violation of 18 U.S.C. § 1028A(a)(1). (Docket #51 at 2) (emphasis present in the defendant's brief, not the Indictment). This is so, he says, because there is no general federal statute proscribing attempt, *see United States v. Rovetuso*, 768 F.2d 809, 821 (7th Cir. 1985), and Section 1028A does not itself proscribe an attempt to commit the crime described therein. Muresanu could not possibly, the argument goes, have been convicted of "attempted" identity theft because there is no such offense.

The problem with Muresanu's argument is manifold. First, he should have made it in a Rule 12 motion before trial. *See* Fed. R. Crim. P. 12(b)(3)(B)(v) (motions that "must be made before trial" include motions alleging "a defect in the indictment . . . including . . . failure to state an offense"). Because Muresanu first raised the "attempt to" typographical error during trial, at the close of the government's case, it is untimely. *See* Fed. R. Crim. P. 12(c)(3).

Muresanu argues that this issue does not fit within the parameters of Rule 12(b)(3)(B)(v) because, in his view, a claim of "failure to state an offense" only includes (1) a legal deficiency in that the indictment does not plead all elements of the offense charged, or (2) a factual deficiency where the undisputed facts of the indictment fall outside the scope of a criminal statute. (Docket #51 at 3–4). But Muresanu does not offer authority confining the Court's consideration of a Rule 12 motion to claims falling into the two categories Muresanu describes. Indeed, the Seventh Circuit recently pronounced the breadth and importance of Rule 12 this way:

> Rule 12(b)(3) serves multiple important functions. A pretrial decision permits the United States to appeal from an order that, because of the Double Jeopardy Clause, cannot be appealed after trial. It permits the parties to brief the issue with care, rather than address a complex legal issue on the fly during a trial. It prevents game playing. Many a defendant is tempted to seek an acquittal knowing that she has a legal issue in her pocket that will lead to a new trial if the jury convicts. All defendants would love to enjoy a trial that they can win but not lose.

*United States v. Nixon*, 901 F.3d 918, 921 (7th Cir. 2018).

Muresanu points to two cases from other circuits where the issue of an indictment charging a non-existent offense first came up after trial. *See*

*United States v. Duka*, 671 F.3d 329 (3d Cir. 2011); *United States v. McGhee*, 854 F.2d 905 (6th Cir. 1988). In *Duka,* the indictment's error was raised for the first time by the government, on appeal, and after the case was submitted to a jury with erroneous language. *Duka*, 671 F.3d at 353. In *McGhee,* the defendant filed a Rule 34 motion after pleading guilty to two counts of the indictment because one of those counts charged attempt to violate a statute that does not proscribe attempt. *McGhee*, 854 F.2d at 907. Neither case is procedurally analogous to this case, and neither involved discussion of Rule 12 or Rule 29; therefore, their findings do not help Muresanu to convince this Court that his argument could not have been made properly under Rule 12.[2]

Further, Muresanu's argument that he is not making a Rule 12 claim for failure to state an offense is belied by the very words he uses in other portions of his brief. He states, for example, that "the offense charged in counts two through four is not a cognizable offense. It is a 'nonoffense.'" (Docket #51 at 7). How this differs from a claim for "failure to state an offense" is lost on the Court.

In the final analysis, Muresanu should have raised, before trial under Rule 12, his claim that the Indictment failed to state an offense because it charged "attempted" identity theft in Counts Two through Four. He did

---

[2]Notably, the decision in *McGhee* predated the 2014 amendment to Rule 34. That amendment "conform[ed] Rule 34 to Rule 12(b) which has been amended to remove language that the court at any time while the case is pending may hear a claim that the 'indictment or information fails . . . to state an offense.' The amended Rule 12 instead requires that such a defect be raised before trial." Fed. R. Civ. P. 34(a) Advisory Committee's Note to 2014 amendment. In other words, the rules have been clarified to make explicit the requirement that a defendant bring, before trial, his claim regarding an indictment's failure to state an offense.

not. Moreover, Muresanu has not even attempted to demonstrate good cause as to why he could not have raised the issue sooner, *see* Fed. R. Crim. P. 12(c)(3), and he is therefore foreclosed from bringing the claim now.

Finally, even if Muresanu were permitted to make a Rule 29 claim for acquittal based on the typographical error in Counts Two through Four of the Indictment, that claim would fail anyway. As explained above, relief under Rule 29 requires that the defendant show that the record contains no evidence, regardless of how it is weighed, from which a jury could have returned a guilty verdict. *Presbitero*, 569 F.3d at 704. There is no dispute that the jury in this case was instructed properly on the law regarding the offense of identity theft proscribed by Section 1028A; the words "attempt to" were not included in the instructions. Muresanu was convicted in three counts of violating Section 1028A. He presents no argument that the government did not meet its burden to prove that Muresanu committed the offense proscribed by that statute—completed (not merely attempted) identity theft. Indeed, the government presented more than sufficient evidence to support the jury's guilty verdict on each of those counts.

For all of these reasons, Muresanu's Rule 29 motion will be denied.

### 3.2 Motion for Arrest of Judgment

Muresanu next argues under Rule 34 that the judgment of conviction on Counts Two through Four must be arrested. Rule 34 is a seldom-used vehicle for a defendant to seek an arrest of his judgment because "the court does not have jurisdiction of the charged offense." Fed. R. Crim. P. 34(a).

The purpose of Rule 34 is to give the trial judge an opportunity to invalidate a judgment when there is a fundamental error appearing on the face of the record, with "the record" meaning only the indictment, the plea, the verdict, and the sentence. *See United States v. Larry*, No. 13-CR-130-BBC,

2014 WL 12683530, at *1 (W.D. Wis. July 30, 2014) (citing 3 Charles Alan Wright & Sarah H. Welling, Federal Practice and Procedure, § 601 at 576 (2011)). In other words, whether the court lacked jurisdiction over the charged offense is a question that must be answered by consulting only the record, not the evidence produced at trial.

Muresanu's argument in support of this motion is that the court lacks jurisdiction to convict a defendant of a crime that does not exist.[3] In other words, Muresanu tries to recast his argument that the Indictment failed to state an offense as a jurisdictional defect in order to wedge his way into the bounds of Rule 34. But the Supreme Court's decision in *United States v. Cotton* made clear that "defects in an indictment do not deprive a court of its power to adjudicate a case." 535 U.S. 625, 630 (2002), *overruling Ex parte Bain,* 121 U.S. 1 (1887); *see also United States v. Longoria,* 298 F.3d 367, 372 (5th Cir. 2002). Therefore, the error in the Indictment in this case did not divest this Court of jurisdiction, and Muresanu's theory under Rule 34 fails.

Muresanu replies to the government's invocation of *Cotton* by positing that the Supreme Court could not have meant that "all indictments can withstand any defect." (Docket #59 at 3). He also notes that *Cotton* involved an indictment that was defective because it omitted the weight of the drugs, which triggered an enhanced sentence, *see Cotton,* 535 U.S. at 628, and the Seventh Circuit has not yet had occasion to consider the application of *Cotton* to an indictment defect like the "attempt to" typo in this case. (Docket #59 at 3).

---

[3] He also argues, citing the old Rule 34, that relief must be granted because the Indictment "does not charge an offense." (Docket #51 at 4). As explained above, Rule 34 was amended in 2014 to remove this language to which Muresanu refers. The rule now provides relief only upon a showing that the court was without jurisdiction over the offense charged.

But that is all beside the point. It is true that a defective indictment that fails to state an offense can be challenged, just not under Rule 34. The comments to the rule specifically direct that such a challenge must be made under Rule 12(b). And Rule 12 requires that such a challenge to a defective indictment be raised before trial. Muresanu failed to do that.

In sum, Muresanu has not shown that the Court lacked jurisdiction over his case, and therefore his motion under Rule 34 must be denied.

### 3.3 Motion for a New Trial

Finally, Muresanu has moved under Rule 33 for a new trial. This rule provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A defendant is entitled to a new trial if there is a reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict. *United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006).

At the outset, the Court notes that Muresanu's Rule 33 motion is not particularly significant. To be sure, as he readily acknowledges in his post-trial briefing, Muresanu "repeatedly confessed to his conduct" after his arrest, and the government introduced those confessions at trial. (Docket #52 at 2). He does not contest the validity or admissibility of those confessions, and he does not argue that his confessions, together with the government's other evidence, fell short of establishing a violation of Section 1028A. To the contrary, the government's evidence established, overwhelmingly, that Muresanu committed the crime of aggravated identity theft. His contention now that the outcome of his trial was so unfair as to warrant a do-over is patently unreasonable.

Nonetheless, the Court will move on to consider the substance of Muresanu's Rule 33 motion. In that motion, Muresanu contends that by

creating jury instructions that excluded the words "attempt to" from the descriptions of the violations charged in Counts Two, Three, and Four for identity theft, the Court impermissibly amended the Indictment in contravention of his Fifth Amendment right to be tried on the indictment returned by the grand jury.

The Fifth Amendment guarantee of the right to indictment by a grand jury and its protection against double jeopardy, together with the Sixth Amendment guarantee that a defendant be informed of the nature of the charges against him, establish the minimum requirements for an indictment. *United States v. Fassnacht*, 332 F.3d 440, 444 (7th Cir. 2003). To comport with these constitutional requirements, an indictment must: (1) state each element of each crime charged; (2) provide adequate notice of the nature of the charges so as to enable the defendant to prepare his defense; and (3) allow the defendant to raise the judgment as a bar to future prosecutions for the same offense. *Id.* at 444–45. "[A]fter an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *Stirone v. United States*, 361 U.S. 212, 215–16 (1960); *see also United States v. Leichtnam*, 948 F.2d 370, 376 (7th Cir. 1991).

A constructive amendment of an indictment—as opposed to a physical amendment—occurs when the evidence at trial "goes beyond the parameters of the indictment in that it establishes offenses different from or in addition to those charged by the grand jury." *United States v. Phillips*, 745 F.3d 829, 832 (7th Cir. 2014) (quotation omitted). This is a violation of the Fifth Amendment. *Id.* To constitute an impermissible constructive amendment, "the crime charged in the indictment must be 'materially different or substantially altered at trial, [so that] it is impossible to know whether the grand jury would have indicted for the crime actually

proved.'" *Id.* (quoting *United States v. Trennell*, 290 F.3d 881, 888 (7th Cir. 2002)).

However, there are exceptions to the prohibition against amendment. First, changes in the indictment that are "merely a matter of form"—including changes that correct "a typographical or clerical error or a misnomer"—"do not constitute 'amendments'" to the indictment. *Leichtnam*, 948 F.2d at 376. When it does not rise to the level of a constructive amendment, a variance between the indictment and what the government is required to prove at trial is fatal only where a defendant is prejudiced in his defense because he cannot anticipate from the indictment what evidence will be presented against him or he is exposed to double jeopardy. *United States v. Howard*, 619 F.3d 723, 727 (7th Cir. 2010).

The other recognized exception to the prohibition against amending an indictment—in addition to corrections for form—is that "an indictment has not been 'amended' if all that has happened is that the evidence or the charges submitted to the trial jury wind up being simply a more limited version of the charges in the indictment. An indictment may be narrowed, either constructively or in fact, without resubmitting it to the grand jury." *Leichtnam*, 948 F.2d at 376.

The Court concludes that, in this case, Counts Two, Three, and Four of the Indictment were not amended in violation of the Fifth Amendment. The variance between the Indictment and the charges as described to the jury was merely one of form; the Court corrected a typo. The Indictment accurately cited the statute under which the government intended to charge and the parties proceeded through the case, including trial, as if the Indictment charged completed acts of identity theft. All of the relevant language of Section 1028A laying out the elements of the offense was

included in the Indictment, with the erroneous addition of "attempt to." The government put on evidence of Muresanu attempting to complete, and then actually completing, the crime of identity theft. The government's theory remained the same throughout trial preparation, including with respect to the exhibits and final pretrial report that were shared with or prepared in conjunction with the defendant. In other words, it cannot reasonably be said that crime charged in Counts Two, Three, and Four of the Indictment was "materially different or substantially altered at trial" such that it is impossible to know whether the grand jury would have indicted for the crime actually proved. *Phillips*, 745 F.3d at 832.

Further, the variance between the Indictment and what the government was required to prove at trial is not fatal because Muresanu has not argued, much less proven, that he was actually prejudiced in his defense because he could not anticipate from the indictment what evidence would be presented against him at trial. *Howard*, 619 F.3d at 727.

**4.     CONCLUSION**

Much ink has been spilled in post-trial motion practice in this case all because of an errant typo and sloppy trial preparation. The original trial date for this case was adjourned because of under-preparedness of the parties and eleventh-hour slapdash motion practice. The parties were instructed to prepare a revised pretrial report and to file amended motions *in limine* that actually addressed the material issues in dispute. Even with this extra time and instruction, neither of the parties noticed or mentioned the government's typo until the close of the government's case at trial. Indeed, both parties declined to offer objection to the draft jury instructions, which repeated the Indictment's typo, on several occasions at the pretrial conference and at trial.

The error was caught in time for its correction before being submitted to the jury. There is no error to be remedied under Rule 29, 33, 34, or any other rule. This precludes any relief from conviction for the defendant.

Accordingly,

**IT IS ORDERED** that the defendant's post-trial motions for acquittal or, in the alternative, arrest of judgment (Docket #51) and for a new trial (Docket #52) be and the same are hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 7th day of December, 2018.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge